NITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, JANE DOE 2,
JANE DOE 3, JANE DOE 4,
JANE DOE 5, JANE DOE 6,
JANE DOE 7, JANE DOE 8,
JANE DOE 9, JANE DOE 10,
and JANE DOE 11,
on behalf of themselves and
others similarly situated,

     Plaintiffs,

-vs-                              Case No.
                                    Hon.

THE REGENTS OF THE UNIVERSITY OF
 MICHIGAN; the UNIVERSITY OF MICHIGAN;
KEFFER DEVELOPMENT SERVICES, LLC,
and MATTHEW WEISS

     Defendants.

---

SOMMERS SCHWARTZ, P.C.
Lisa M. Esser (P70628)
Richard L. Groffsky (P32992)
Jason J. Thompson (P47184)
Matthew G. Curtis (P37999)
Attorney for Plaintiffs
One Towne Square, Suite 1700
Southfield, Michigan, 48076
(248) 355-0300
LEsser@sommerspc.com
RGroffsky@sommerspc.com
JThompson@sommerspc.com
MCurtis@sommerspc.com

PITT MCGEHEE PALMER BONANNI
& RIVERS
Megan A. Bonanni (P52079)
Kevin M. Carlson (P67704)
Beth M. Rivers (P33614)
Danielle Y. Canepa (P82237)

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
ONE TOWNE SQUARE • 17TH FLOOR • SOUTHFIELD, MICHIGAN 48076 • (248) 355-0300

Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonnani@pittlawpc.com
kcarlson@pittlawpc.com
brivers@pittlawpc.com
dcanepa@pittlawpc.com

_____

*There are pending civil actions arising out of similar transactions or occurrences alleged in this Complaint. Those cases have been filed in this Court for different Plaintiffs under Case Numbers 2:25-cv-10870, 2:25-cv-10855, 2:25-cv-10806 and 2:25-cv-10876.*

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JANE DOE 8, JANE DOE 9, JANE DOE 10 and JANE DOE 11 ("Plaintiffs"), through their attorneys, Sommers Schwartz, P.C., and Pitt McGehee Palmer Bonanni & Rivers, P.C., for their Complaint against MATTHEW WEISS, the REGENTS OF THE UNIVERSITY OF MICHIGAN, the UNIVERSITY OF MICHIGAN, and KEFFER DEVELOPMENT SERVICES, LLC, state as follows:

## INTRODUCTION

Students and alumni connected to the University of Michigan from 2015 to 2023—many of them student-athletes—have been subjected to a deeply troubling and unlawful breach of privacy, stemming from the actions of former University of Michigan football co-offensive coordinator and quarterback coach Matthew Weiss, whose violations of their privacy were facilitated by yet another recent incident of institutional negligence. This class action lawsuit, filed against Matthew Weiss, the Regents of the University of Michigan, the University itself, and Keffer Development Services, LLC, seeks justice for the unauthorized access and misuse of personal information—an abuse so severe that student-athletes are now receiving formal

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**

notification from the U.S. Department of Justice that their private information has been exposed, including Plaintiffs Jane Doe 10 and Jane Doe 11.  This action is brought to hold the Defendants accountable for yet another instance in a developing pattern of their failure to protect those in their care, particularly student athletes, from foreseeable harm.

## PARTIES

1.      Plaintiff Jane Doe 1 was a student athlete at the University of Michigan between 2017-2020 and was a member of the University of Michigan Women's Gymnastics Team.

2.      Plaintiff Jane Doe 1 is domiciled in Harris County, Texas, in the City of Houston.

3.      Plaintiff Jane Doe 2 is a student at the University of Michigan and was a student athlete between 2023-2024 and was a member of the Women's Soccer Team.

4.      Plaintiff Jane Doe 2 is domiciled in Washtenaw County, Michigan, in the City of Ann Arbor.

5.      Plaintiff Jane Doe 3 was a student athlete at the University of Michigan, Dearborn between 2015-2016 and was a member of the University of Michigan, Dearborn Women's Cheerleading Team.

6.      Plaintiff Jane Doe 3 is domiciled in Oakland County, Michigan, in the City of Birmingham.

7.      Plaintiff Jane Doe 4 was a student athlete at the University of Michigan between 2014-2018, and was a member of the Women's Soccer Team.

8.      Plaintiff Jane Doe 4 is domiciled in Oakland County, Michigan, in the City of Rochester.

9.      Plaintiff Jane Doe 5 was a student athlete at the University of Michigan between 2014-2018, and was a member of the Women's Soccer Team.

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

3

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

10.     Plaintiff Jane Doe 5 is domiciled in Oakland County, Michigan, in the City of West Bloomfield.

11.     Plaintiff Jane Doe 6 was a student athlete at the University of Michigan between 2014-2018, and was a member of the Women's Soccer Team.

12.     Plaintiff Jane Doe 6 is domiciled in Fulton County, Georgia, in the City of Atlanta.

13.     Plaintiff Jane Doe 7 was a student athlete at the University of Michigan between 2014-2018, and was a member of the Women's Soccer Team.

14.     Plaintiff Jane Doe 7 is domiciled in Wayne County, Michigan, in the City of Plymouth.

15.     Plaintiff Jane Doe 8 was a student athlete at the University of Michigan between 2014-2015, and was a member of the Women's Soccer Team.

16.     Plaintiff Jane Doe 8 is domiciled in Orleans Parish, Louisiana, City of New Orleans.

17.     Plaintiff Jane Doe 9 was a student athlete at the University of Michigan between 2014-2016, and was a member of the Women's Soccer Team.

18.     Plaintiff Jane Doe 9 is domiciled in Missouri, City of St. Louis.

19.     Plaintiff Jane Doe 10 was a student athlete at the University of Michigan between 2016-2019 and was a member of the University of Michigan Women's Gymnastics Team.

20.     Plaintiff Jane Doe 10 is domiciled in Illinois, City of Chicago.

21.     Plaintiff Jane Doe 11 was a student athlete at the University of Maryland and Loyola University Chicago, playing on the respective Volleyball Teams from 2017 to 2021.

22.     Plaintiff Jane Doe 11 is domiciled in Illinois, City of Chicago.

23.     The Regents of the University of Michigan ("the Regents") is a corporate entity, with the right to be sued, and is responsible for governing the University of Michigan, pursuant to Mich. Comp. Laws § 390.3 and § 390.4.

24.     The University of Michigan ("the University") is a public university organized and existing under the laws of the State of Michigan.

25.     The University has received, and continues to receive, funding from the State of Michigan, making it, among other reasons, subject to the laws of the State of Michigan.

26.     Keffer Development Services, LLC ("Keffer") is a Pennsylvania limited liability company that has continuously and systemically conducted business in Michigan by directly providing services to residents and entities within the State of Michigan, thereby availing itself of protections of the law of the State of Michigan.

27.     Any wrongful conduct and legal violations committed by Defendant Keffer that are subsequently outlined in this Complaint occurred specifically with respect to the Plaintiffs that resided in Michigan during the time of the incident alleged in this Complaint.

28.     Matthew Weiss ("Weiss") is an individual residing in the State of Michigan.

## JURISDICTION

29.     Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1367 as this matter involves a claim under the Stored Communications Act, 18 U.S.C. § 2701(a) *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Title IX, 20 U.S.C. § 1681(A) *et seq.*; 42 U.S.C. § 1983; the Fourth Amendment of the U.S. Constitution; and the Fourteenth Amendment of the U.S. Constitution, and this Court has supplemental jurisdiction of all additional causes of action alleged in this Complaint pursuant to 28 U.S.C. §1367(a); and subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) under the Class Action Fairness Act ("CAFA") as a class action

5

lawsuit in which the amount in controversy exceeds $50,000,000.00, there are more than one-hundred putative class members, and the majority of the putative class members are citizens of a state different than the state of which Defendants are citizens.

30.     Venue is appropriate in this district under U.S.C. §1391 since a substantial part of the events giving rise to these claims occurred within, and Defendants conduct or have conducted their businesses in the Eastern District of Michigan.

31.     Plaintiffs' injuries are redressable by monetary compensation, and all alleged injuries of Plaintiffs and class members can be traced to Defendants' conduct.

## COMMON ALLEGATIONS

32.     At all relevant times, Weiss was employed by the University.

33.     Upon information and belief, Weiss's actions alleged in this Complaint happened during his employment at the University.

34.     The Regents had a responsibility and duty to oversee the University's operations, polices and procedures, and care for and protect the University's students.

35.     Keffer had a responsibility and duty to protect the private data of student athletes stored within their database and to have mechanisms in place to prevent such a gross invasion of privacy as what occurred in this case.

36.     The risk of identity theft and breaches of security to access users' private, personal, and confidential information is foreseeable within the Defendants' information technology systems, and Defendants are well aware of the foreseeable risks of breaches, such as those alleged in this case, that are likely to occur if their practices in detecting, preventing, and mitigating such breaches are substandard.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

6

37.     The Regents and University breached their duty of care when University personnel failed to supervise and monitor Weiss adequately, resulting in the unlawful invasion of privacy of Plaintiffs and over a thousand others.

38.     Keffer breached its duty of care when it failed to have adequate measures in place to prevent the hacking by Weiss, resulting in the unlawful invasion of privacy of Plaintiff and over a thousand others.

39.     Plaintiffs and putative class members are current and former student-athletes at the University of Michigan and other affected institutions in the United States that were specifically targeted by Weiss and harmed by the violation of their privacy.

40.     The Regents are responsible for overseeing the University's operations, finances, budget approvals, policies, construction projects, etc.

41.     The Regents failed in this duty by failing to consider, implement, enforce, or follow a policy in which proper oversight and supervision of University personnel, including Weiss, could have ensured that breaches of Plaintiffs' privacy would not have occurred.

42.     The Regents failed in this duty by failing to take any action to prevent the harm caused to Plaintiffs and other student-athletes as alleged in this Complaint.

43.     The Regents failed in their duty to establish University policies that would include monitoring of personnel, such as Weiss, so the privacy of students, such as Plaintiffs and other student-athletes, would be protected.

44.     The Regents and the University were required to ensure that student-athletes, such as Plaintiffs, were not exposed to professionals who would invade their privacy.

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

7

45.    The Regents and the University were reckless in failing to ensure that media and other private, personal and sensitive information, including but not limited to those of Plaintiffs, was securely protected, as the Regents and the University were entrusted to do so.

46.    The Regents, University and Keffer (collectively "The Non-Individual Defendants") had, and continue to have, a duty to protect Plaintiffs and to take appropriate security measures to protect private, personal, and intimate information and images.

47.    This duty was breached by the Non-Individual Defendants when there was a failure to consider or implement adequate security measures to protect these private, personal, and intimate information and images of Plaintiffs and those similarly situated.

48.    The Regents had the responsibility to financially oversee the University and all three University of Michigan campuses but failed to ensure this duty was properly exercised when they failed to allocate necessary resources to prevent security breaches and instead prioritized avoiding costs associated with implementing necessary security measures.

49.    The University, like the Regents, failed to uphold these responsibilities and engaged in similar breaches of duty despite having all the same duties.

50.    Keffer, like the University and Regents, failed to uphold these responsibilities and engaged in similar breaches of duty despite having all the same duties.

51.    Plaintiffs, and putative class members, are current and former student-athletes at the University of Michigan and other affected institutions that were specifically targeted by Weiss and harmed by the violation of their privacy by Defendants.

52.    Plaintiffs, and those similarly situated, entrusted the Non-Individual Defendants to protect their private, intimate, and personal images and information.

8

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

53.     The University breached its duty when it recklessly allowed Weiss to access Plaintiffs', and other student-athletes, private information and images and thus invading their privacy.

54.     The Regents also breached their general supervision privileges over the University's expenditures after they failed to ensure that the University's millions of public dollars were allocated to protect the privacy of students, including student-athletes', private images and information.

55.     The University employed and had authority over Weiss.

56.     The University assigned and directed job responsibilities to Weiss.

57.     These job responsibilities enabled Weiss to access private, personal, and intimate images and information of Plaintiffs and others similarly situated, all of which were entrusted to the University to be safeguarded.

58.     While the University gave Weiss the means to invade the privacy of Plaintiffs and others similarly situated, the University failed to supervise or monitor his actions.

59.     The University breached the trust and confidence of Plaintiffs and other student-athletes by granting Weiss the ability and resources to allow him to track, invade, and surveil Plaintiffs and others by invading their personal lives and obtaining images and personal information about them.

60.     With no University supervision, Weiss, during his employment with the University, invaded Plaintiffs' privacy and the privacy of other similarly situated student athletes.

61.     The Regents, the University, and Weiss all engaged in misconduct, recklessness, and misconduct which also implicated Keffer.

62.     Keffer's negligence and reckless disregard contributed to Weiss' privacy violations against Plaintiffs and other student athletes.

63.     Keffer agreed to safely maintain and store information, images, expressions, and videos of Plaintiffs and their peers in a secure manner, free from access from unauthorized employees of the University such as Weiss or other unauthorized third parties.

64.     Keffer knew that information stored for and by Plaintiffs and others was personal, private, and intimate.

65.     Keffer had an express obligation to safeguard and protect the personal, private, and intimate images and information entrusted to Keffer by Plaintiffs and others similar to them.

66.     Keffer breached these obligations when they failed to consider, enact, or implement adequate policies, procedures, or security measures to safeguard and protect the personal, private, and intimate images and information entrusted to Keffer by Plaintiffs and others similar to them.

67.     As a direct result of Keffer's security failures, Weiss accessed the personal, private, and intimate images and information entrusted to Keffer by Plaintiffs and others similar to them.

68.     Keffer collects and stores information including private information about students and student athletes around this nation.

69.     The University and the Regents permitted Keffer to collect and store private, personal, and intimate information about students and student athletes.

70.     Plaintiffs and others similar to them entrusted that the Regents, the University and Keffer would safeguard their private images and information and ensure the confidentiality of their data.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

71.     The Regents and the University failed to take reasonable action to ensure that Keffer retained the privacy of the sensitive information of Plaintiffs and others like them.

72.     The Regents' negligence in this respect harmed Plaintiffs.

73.     The University's negligence in this respect also harmed Plaintiffs.

74.     Keffer failed to take appropriate and reasonable action to ensure that it retained the privacy of the images and information of Plaintiffs and others like them entrusted to them.

75.     Keffer did not take necessary and reasonable precautions to protect against the access by Weiss of the private information and images of Plaintiffs and those similarly situated.

76.     Due to the negligent and reckless conduct of the Non-Individual Defendants, Weiss was able to, and did, unlawfully obtain and misuse private and confidential information belonging to Plaintiffs and other student-athletes like Plaintiffs.

77.     Upon information and believe, Weiss unlawfully gained access to the social media, email, cloud storage, and other digital accounts of more than 3,300 people including but not limited to Plaintiffs and other University student athletes that were active between 2015 and 2023, as was detailed in the federal criminal indictment against him, and which is incorporated herein.

78.     The University and the Regents enabled Weiss to have access and use of electronic credentials that were his means of viewing and downloading personal, private, and intimate images and other confidential information of Plaintiffs and others similarly situated to them.

79.     The Non-Individual Defendants failed to monitor, supervise, and review Weiss's activity, and failed to ensure his work duties were being undertaken and completed with respect for Plaintiffs' privacy and the privacy of others.

11

80.    The Non-Individual Defendants failed to implement reasonable measures of security, failing to prove the most basic of security protection for the private information of student-athletes, including failing to consider or have multiple authentication credentials, background checks, peer reviews, or oversight.

81.    The Non-Individual Defendants failed to implement reasonable protective measures to detect Weiss' irregular activity and insider hacking, including but not limited to, appropriate authentication tools, behavioral analytics, anomaly detection, machine learning, and real-time monitoring of user activity, looking for deviations from established patterns and suspicious actions like unusual login attempts or access to sensitive data, any of which would have prevented Weiss' improper access to private student information.

82.    As a result of these failures, Weiss accessed private, intimate, and personal information pertaining to Plaintiffs and others similarly situated, all of which was maintained by Keffer, as encouraged and authorized for collection by the University and the Regents.

83.    The careless and negligent misconduct of the Non-Individual Defendants in these respects enabled Weiss to target female college athletes to obtain their private and sensitive information without authorization, including but not limited to Plaintiffs.

84.    The Non-Individual Defendants knew that Weiss had an advantage over others, by means of his job responsibilities, and would be able to access the private information and privacy interests of the Plaintiffs and their peers.

85.    Because the Non-Individual Defendants failed to undertake  reasonable security measures, he was enabled to freely research, target, and invade the privacy of various University athletes, particularly female athletes, who were targeted based on their school affiliation, athletic history, and physical attributes.

86.     The failure of the Non-Individual Defendants to review Weiss' conduct, assess his credentials, monitor his work, or ensure oversight, left him free to prey on Plaintiffs and others, all without reporting what he was doing in furtherance of his duties. As such, Weiss was able to execute his goal of obtaining private photographs and videos of Plaintiffs and others that were never intended to be shared beyond Plaintiffs' intimate partners, and likewise for other victims similarly situated to the Plaintiffs.

87.     Due to the recklessness of the University and the Regents, and the gross negligence/negligence of Keffer, Weiss downloaded personal, intimate digital photographs and videos of Plaintiffs and others, all of which Plaintiffs and class members entrusted to the Non-Individual Defendants.

88.     Because the Non-Individual Defendants negligently and recklessly failed to exercise any reasonable control over Weiss, in the course of his employment with the University, Weiss was able to successfully target athletes such as Plaintiffs and others similar to them and download, obtain, and use their private and sensitive information and media.

89.     Because the Non-Individual Defendants negligently and recklessly failed to monitor Weiss, he was able to compile records on individuals whose media he wanted, all of which he obtained, and then viewed.

90.     The information that the Non-Individual Defendants permitted Weiss to obtain is highly private, secretive, embarrassing, and distressing when shared without authorization, and humiliating for it to be seen without authorization.

91.     Weiss obtained access—without and in excess of his authorization—to personal and confidential student-athlete information and databases of more than 100 colleges and

universities across the country that were maintained by Keffer including but not limited to those of university athletes like Plaintiffs.

92.     Thousands of students still remain at risk because the Non-Individual Defendants have failed to undertake any review of how Plaintiffs' private and personal information is stored, maintained, and who can access such information, and from where.

93.     Upon information and belief, the University and the Regents also failed to properly investigate Keffer, Keffer's protocols, and failed to adequately monitor or establish safeguards for Keffer's work with the students and their private images to ensure they carried out their duties to safeguard and protect the private information entrusted to them.

94.     The University and the Regents also failed to properly consider and/or implement ways to prevent and shield students from Weiss' misconduct.

95.     Neither the University nor the Regents have provided an explanation as to why they failed to adequately undertake any review of the contract with Keffer, investigate Keffer, monitor or establish safeguards for Keffer's work with the students and their private images, or otherwise considered what action they should have taken to prevent this unauthorized access by Weiss.

96.     Weiss, due to the lack of control and enabling from the Non-Individual Defendants, obtained unauthorized access to databases containing highly sensitive and private information of the Plaintiffs and others.

97.     Upon information and belief, many, if not all, of the databases at issue are maintained by Keffer and were relied on by Plaintiffs to be securely safeguarded.

98.     Plaintiffs and others similarly situated entrusted the University and the Regents to ensure Keffer protected their private information and images.

14

99.    The Non-Individual Defendants failed to implement any reasonable action that would have protected Plaintiffs' private information from unauthorized access by Weiss.

100.    Upon information and belief, exploiting these unsecured databases, Weiss downloaded personally identifiable information (PII) and medical records of more than 150,000 student-athletes, including Plaintiffs.

101.    Upon information and belief, Weiss also downloaded passwords that athletes used to access Keffer's computer system to view and update their data, including that of Plaintiffs.

102.    The athletes' passwords that Weiss downloaded were encrypted, but poorly secured because of the Non-Individual Defendants' recklessness so that Weiss, while not being monitored or supervised by the Non-Individual Defendants, managed to crack the encryption, using basic internet research.

103.    Through open-source information, Weiss conducted additional targeted research on athletes such as Plaintiffs and obtained personal information such as their mothers' maiden names, pets, places of birth, and nicknames, all of which they had entrusted to Non-Individual Defendants to keep private and none of which the Non-Individual Defendants actually properly safeguarded.

104.    Upon information and belief, using a combination of data obtained from the student-athlete databases and his internet research, based on the lack of supervision or monitoring by the Non-Individual Defendants, despite the foreseeability of such breaches as well as their responsibility to prevent and mitigate such breaches, Weiss was able to obtain access to the social media, email, and/or cloud storage accounts of more than 2,000 targeted athletes including but not limited to Plaintiffs and those similarly situated.

105.   Once Weiss obtained access to the accounts of targeted athletes, he searched for and downloaded private, personal, and intimate media that were not publicly shared.

106.   Upon information and belief, Weiss also obtained unauthorized access to the social media, email, and/or cloud storage accounts of more than 1,300 additional students and/or alumni from universities and colleges from around the country including, but not limited to Plaintiffs, as a result of the Non-Individual Defendants reckless disregard for their safety and personal privacy.

107.   Once Weiss gained access to the accounts, he extracted personal, private, and intimate media.

108.   The Non-Individual Defendants each took no reasonable actions to prevent this foreseeable and unauthorized access.

109.   The Non-Individual Defendants have failed to take any reasonable steps to remedy the harm caused by the privacy violations they permitted to occur, and they have not contacted Plaintiffs or other affected student-athletes that they know or may have known had their privacy violated at the hands of Weiss.

110.   Upon information and belief, Weiss exploited weaknesses in account authentication of Plaintiffs and others similarly situated to further gain access to accounts of students and alumni allowing him to infiltrate even more social media, email, and cloud storage accounts.

111.   The Non-Individual Defendants have long been on notice that this kind of information Weiss accessed was expected to be kept private, would be embarrassing if accessed by third parties, and any breach would cause significant harm. Despite this, they failed to implement appropriate safeguards.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**

16

112.   Weiss unlawfully obtained digital photographs, videos, and other private data belonging to more than 3,300 individuals including but not limited to Plaintiffs in of the course of his employment, and his misconduct and the misconduct of the Non-Individual Defendants were violations of Michigan and other state privacy laws.

113.   From approximately 2021 to 2023, Weiss, in the course of his employment, unlawfully transferred, possessed and used, without lawful authority, information, images, and other media of Plaintiffs and others.

114.   From approximately 2020 to 2021, Weiss intentionally accessed—as a result of the Non-Individual Defendants' failure to protect the privacy of Plaintiffs and others—computers, networks, and information relating to Plaintiffs and others that was private in nature.

115.   Weiss then, unlawfully, and under negligent supervision or monitoring by the Non-Individual Defendants, downloaded personally identifiable information and other medically protected information and medical records of more than 150,000 athletes including but not limited to Plaintiffs, all in violation of Michigan and other state privacy laws.

116.   Upon information and belief, the United States Department of Justice is in the process of notifying thousands of potential victims that their privacy was breached..

117.   Jane Doe 10 and Jane Doe 11 have already received such a notice from the United States Department of Justice.

118.   As a direct result of the negligence, recklessness, and misconduct of the Defendants, Plaintiffs and those similarly situated have incurred substantial monetary and emotional damages exceeding $50,000,000, exclusive of costs, interest, and fees.

## CLASS ALLEGATIONS

119.    Plaintiffs file this lawsuit both individually and as representatives of all others similarly situated pursuant to Fed. R. Civ. P.  23 on behalf of the following Class:

> All student athletes whose personal data, images, information, social media, or videos were accessed by Weiss without authorization (the "Class Members").

120.    In addition, Plaintiffs believe a subclass may be appropriate for all class members who receive notice from the United States Department of Justice as to the likely violation of their privacy and rights by Weiss.  Therefore, Plaintiffs plead a subclass as follows:

> All student athletes whose personal data, images, information, social media, or videos were accessed by Weiss without authorization and who received a notice letter from the United States Department of Justice as to Weiss (the "DOJ Letter Sub-Class").

121.    Excluded from the Class are: (a) Defendant and any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; and (c) the attorneys representing any parties to this Class Action.

122.    Plaintiffs reserve the right to modify or amend the definition of the proposed class and/or sub-classes before the Court determines whether certification is appropriate.

**Numerosity – Fed. R. Civ. P. 23(a)(1)**

123.    Law enforcement officials have disclosed the numbers of victims is significant and exceeds one thousand satisfying the numerosity requirement. Although the  exact  number  of Class  Members  is  uncertain at this time, it will certainly be  ascertained  through appropriate discovery, the number is great enough such that joinder is  impracticable.

124.    The members of the Class are so numerous and geographically disperse that individual joinder of all members is impracticable.

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

125.    Similarly, Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

126.    Class Members are readily identifiable from information and records in the possession of the federal and state authorities, the Regents, the University, and Keffer.

127.    Electronic records maintained by the Non-Individual Defendants who conducted their own investigation can confirm the identification of Class Members.

**Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

128.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical violations, practices, and injuries are involved, and the burden of proof to establish violations of those rights involve uniform, objective questions of fact and law, both for the prosecution and for the defense. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542-543 (6th Cir. 2012); *Hicks v. State Farm*, 2019 WL 646044 (E.D. Ky. 2019) *aff'd* 965 F3d 452 (2020); *Speerly v. Gen. Motors, LLC,* 343 F.R.D. 493, 512-522 (E.D. Mich 2023).

129.    The common questions of fact and law existing as to all Class Members predominate over questions affecting only individual class members. The evidence required to advance Plaintiffs' and Class Members' claims are the same, common to all; as is true of the evidence Defendants will likely rely upon in defense of this action.   Thus, the elements of commonality and predominance are both met.

130.    For example, establishing the facts of  how, where, who, when, and through what means the invasions of Plaintiffs and other Class Members occurred are identical.

19

131.    Defendants' actions, inactions, negligence, and recklessness apply commonly to all Plaintiffs and Class Members.

132.    The downloads and invasions by Weiss and the improper conduct accessing private information through unsecure facilities without permission is common to all Class Members and has caused injury to the Plaintiffs and Class Members in common manners.

133.    The Sixth Circuit has held that cases involving a course of conduct or standard in a statute favors a finding of predominance "because the defendant's liability to all class members turned on whether it violated the applicable federal statute, not whether any individual customer requested the wire-maintenance program." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 566 (6th Cir. 2007); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 462 (6th Cir. 2020). Liability will be tested under the same standard, equally applicable for all class members, making certification appropriate under Rule 23(b)(3).

134.    The majority of legal and factual issues of the Plaintiffs and the Class Members predominate over any individual questions, including:

(a)    Whether the Non-Individual Defendants implemented policies and practices to, and in fact did, supervise, monitor and investigate Weiss and Keffer adequately; secure media and other personal and sensitive information; allocate resources to preventing security breaches;

(b)    Whether the Non-Individual Defendants lack of control enabled unauthorized access to databases containing highly sensitive and private information of the Plaintiffs and others;

(c)    Whether Non-Individual Defendants are responsible and liable for the actions of Weiss and Keffer;

(d)    Questions of law relative to liability, including the constitutional and statutory provisions pleaded, and defenses to same;

(e)    Questions of media and digital security, including standards, applicable to Non-Individual Defendants;

(f) Which years of activity are actionable; and

(g) Other common questions of fact and law relative to this case that remain to be discovered.

135. Resolving the claims of these Class Members in a single action will provide benefit to all parties and the Court by preserving resources, avoiding potentially inconsistent results, and providing a fair and efficient manner to adjudicate the claims.

Commonality:

136. Predominance does not require Plaintiffs to prove an absence of individualized damage questions, or even proof of class wide damage in the aggregate. *Kuchar v. Saber Healthcare Holdings LLC*, 340 F.R.D. 115, 123 (N.D. Ohio 2021) (finding individualized damages questions also do not defeat a predominance finding and noting "when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.")(citing *Hicks*, 965 F.3d at 460).

**Typicality – Fed. R. Civ. P. 23(a)(3)**

137. This test "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (citation and quotation omitted). The named class representatives meet the criteria for typicality.

138. Typicality does not mean the same claims or facts. *Senter v. General Motors Corp.,* 532 F.2d 511, 525 n. 31 (6th Cir. 1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976): "[t]o be typical a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."

139. Here, typicality requires class representatives who, in their status as student athletes, were subject to the same common university rules, polices, practices and conduct.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

140.    Plaintiffs claims are typical of the Class Members because they are highly similar and the same and related in timing, circumstance, and harm suffered. To be sure, there are no defenses available to Defendants that are unique to individual Plaintiffs. The injury and causes of actions are common to the Class as all arising from the same statutory and privacy interests.

141.    Defendants cannot merely raise speculation as an argument against certification, but rather, they must demonstrate the likelihood of any such defenses actually applying to class member claims. *Fox v. Saginaw County*, 67 F.4th 284, 301 (6th Cir. 2023).

142.    The Supreme Court requires more than Defendants can provide in this regard. In *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 276 (2014) the Supreme Court concluded that so long as plaintiffs could show that their evidence is capable of proving the key elements to plaintiffs' claim on a class-wide basis, the fact that the defendants would have the opportunity at trial to rebut that presumption as to some of the plaintiffs did not raise individualized questions sufficient to defeat predominance. "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Id.*

143.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

144.    The need to conduct additional post certification stage discovery, such as further file review or class member surveys, to eliminate uninjured persons after trial, does not act as a *de facto* bar to certification. *Nixon,* 2021 WL 4037824, at *8 (citing *Young,* 693 F.3d at 540); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001); *Perez v. First Am. Title Ins. Co.,* 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial

amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery."); *Slapikas v. First Am. Title Ins. Co.,* 250 F.R.D. 232, 250 (W.D. Pa. 2008) (finding class action manageable despite First American's assertion that "no database exists easily and efficiently to make the determination that would be required for each file").

145.    Any remaining disputes on membership or class members damages can be left to a special master's decision. *Whitlock v. FSL Mgmt., LLC*, 2012 WL 3274973, at *12 (W.D. Ky., 2012), *aff'd,* 843 F.3d 1084 (6th Cir. 2016). By placing the validation of injury step at the end of the class trial process, no injured class members are left out, and at the same time, Defendants are not at risk for paying any uninjured class members.

**Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)**

146.    Plaintiffs will adequately represent the class. They have no interests that are in conflict with those of the class. In addition, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority of Class Treatment – Fed. R. Civ. P. 23(b)(3)**

147.    The class action is superior to any other available procedures for the fair and efficient adjudication of these claims, and no unusual difficulties are likely to be encountered in the management of this class action.

148.    The superiority analysis required to certify a class is designed to achieve economies of time, effort and expense, and to promote uniformity of decisions as to persons similarly placed, without sacrificing procedural fairness or bringing about other undesirable results. *Martin v. Behr-Dayton Thermal Parts LLC*, 896 F.3d 405, 415 (6th Cir. 2018) (citing *Amchem Prods v. Windsor.* 521 U.S. 591, 615 (1997)).

23

149.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

150.   It would be an unnecessary burden upon the court system to require these individuals to institute separate actions. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

151.   Pursuing this matter as a class action is superior to individual actions because:

a.   Separate actions by Class Members could lead to inconsistent or varying adjudications that would confront Defendants with potentially incompatible standards of conduct;

b.   Many victims will not come forward without a certified class;

c.   Final equitable relief will be appropriate with respect to the entire Class as a whole for monitoring, protection, therapy and other equitable forms of relief that may be provided;

d.   This action is manageable as a class action and would be impractical to adjudicate any other way;

e.   Absent the class action, individual Class Members may not know if their privacy was invaded; where such images are currently being stored, or are accessible by others; and their injuries are likely to go unaddressed and unremedied; and,

**f.**   Individual Class members may not have the ability or incentive to pursue individual legal action on their own.

**Particular Issues – Fed. R. Civ. P. 23(c)(4)**

152.   In the event unforeseen issues preclude class certification under Fed.R.Civ.P. 23(b)(3), the case is still appropriate for class certification under Fed.R.Civ.P. 23(c)(4), as to the particular issues of liability.

24

153.    Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making declaratory relief, as described below, with respect to the Class as a whole.

## COUNT I – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT – 18 U.S.C. § 1030

### *(Defendants Weiss, University and Regents)*

154.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

155.    Plaintiffs allege that Defendants Weiss, the University, and the Regents violated the Computer Fraud and Abuse Act.

156.    Weiss violated the Computer Fraud and Abuse Act by unlawfully accessing, Plaintiffs' private information.

157.    Weiss did so in connection with his job duties at the University.

158.    Weiss' actions constituted a violation of the Act because he "intentionally accesse[d] a computer without authorization" and/or "exceed[ed] authorized access, and thereby obtain[ed] ... information." 18 U.S.C. § 1030(a)(2)(C).

159.    Under the law, Weiss is considered an "inside hacker" since he accessed a computer system with permission as part of his employment that dealt with Plaintiffs and the Class Members as student athletes, however, Weiss in connection with and furtherance of his job duties, then exceeded the parameters of authorized access by entering an area of computerized network of information that was off-limits.

160.    This situation can be compared to opening your office door to discover an unauthorized individual inside. If the person is a stranger with no right to be in the building, they lack authorization. If the person is a coworker, they may have exceeded their authorized access.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

161.   Weiss's actions were deliberate because he knew he was unauthorized and proceeded nevertheless and did so with the implicit approval from the University.

162.   The University is vicariously liable for his actions because he conducted them while performing his role as a sports employee of the University's athletic department.

163.   Legal precedent establishes that an employer is responsible for the wrongful acts committed by its employees in the course of their employment.

164.   Under 18 U.S.C. § 1030(g), Plaintiffs may recover damages in this civil action from Weiss and the University along with injunctive relief or other equitable relief.

165.   Given the willful violations committed by Weiss and the University, resulting in significant damage, harm, humiliation, and distress to Plaintiffs and other Class Members, Plaintiffs should be awarded all appropriate damages in this matter.

## COUNT II – VIOLATIONS OF THE STORED COMMUNICATIONS ACT – U.S.C. § 2701 *et seq*

### *(Defendants Weiss, University and Regents)*

166.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

167.   Plaintiffs allege that Defendants Weiss, the University, and the Regents violated the Stored Communications Act.

168.   The Stored Communications Act, 18 U.S.C. § 2701 *et seq.,* prohibits the unauthorized access of web-based cloud storage and media accounts such as those at issue and other accounts hosted by Keffer that did and do, like for Plaintiffs, contain personal, private, and intimate information about and relating to Plaintiffs and others situated similar to Plaintiffs.

169.   Specifically, under 18 U.S.C. § 2701(a), it is not lawful for any person to: (1) intentionally accesses without authorization a facility through which an electronic communication

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

service is provided; or (2) intentionally exceed an authorization to access that facility; and thereby obtain, alter, or prevent authorized access to a wire or electronic communication while it is in electronic storage in such system.

170.   Plaintiffs' electronic information and communications were in electronic storage and clearly fall within the scope of the statute.

171.   The information, messages, files, and media were accessed by Weiss without authorization, in connection with his role at the University.

172.   Weiss's access without authorization in connection with his University job duties were deliberate.

173.   There is no manner in which Plaintiffs' private information, messages, files, and media that is in issue could have been obtained without unauthorized access and would not have been obtained without unauthorized access had Weiss not been an employee of the University working in his athletic capacity for which the University hired and employed him.

174.   Under Section 2707 of the Stored Communications Act, individuals may bring a civil action for the violation of this statute.

175.   This law imposes strict liability on violators.

176.   The statute provides that a person aggrieved by a violation of the act may seek appropriate relief including equitable and declaratory relief, actual damages or damages no less than $1,000 punitive damages, and reasonable attorney's fee[s] and other litigation costs reasonably incurred according to 18 U.S.C. § 2707(b)-(c).

177.   The University's and Weiss's access to Plaintiffs' private, personal, and intimate information, messages, files, and media constituted a violation of 18 U.S.C. § 2701(a).

27

178.   The University and Weiss knew they did not have authority to access Plaintiffs' private, personal, and intimate information, messages, files, and media but did so anyway.

179.   Their intentional misconduct led to multiple violations of the Stored Communications Act.

180.   As a result of these violations, Plaintiffs have incurred significant monetary and nonmonetary damages as a result of these violations of the Stored Communications Act, and Plaintiffs seek appropriate compensation for their damages.

181.   Under the statute, Plaintiffs should be granted the greater of (1) the sum of their actual damages suffered and any profits made by the University and Weiss as a result of the violations or (2) $1,000 per violation of the Stored Communications Act.

182.   Given these violations were deliberate, the Court should assess punitive damages against Defendants as well.

183.   Plaintiffs should also be granted reasonable attorney fees and costs.

### COUNT III – VIOLATION OF TITLE IX, 20 U.S.C. § 1681(A) *Et Seq.*

### *(Defendants University and Regents)*

184.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

185.   Plaintiffs allege that Defendants the University and the Regents violated Title IX, 20 U.S.C. § 1681(A) *et seq.*

186.   The University receives federal financial support for its educational programs and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a), *et seq.*

187.   Title IX mandates that "No person in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..."

188.   Each Plaintiff and Class Member is a "person" under the Title IX statutory language.

189.   Weiss specifically targeted women in his unwanted invasions of privacy and his misconduct is discrimination on the basis of sex.

190.   The University, under Title IX, is obligated to investigate allegations of sexual harassment.

191.   The University was aware of the sensitive nature of the private and personal information of Plaintiffs to which Weiss was able to access given his role.

192.   The University and Regents acted with deliberate indifference to sexual harassment by:

      a.      Failing to protect Plaintiffs and others as required by Title IX;

      b.      Neglecting to adequately investigate and address the complaints regarding the deeply sensitive information Plaintiffs provided;

      c.      Failing to institute corrective measures to prevent Weiss from sexually harassing other students; and

      d.      Failing to adequately investigate the other multiple acts of deliberate indifference.

193.   The University and the Regents acted with deliberate indifference as their lack of response to the sexual harassment was clearly unreasonable in light of the known circumstances.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

194.   The University's failure to promptly and appropriately protect, investigate, and remedy and respond to the sexual harassment of women has effectively denied them equal educational opportunities at the University, including access to medical care and sports training.

195.   At the time the Plaintiffs received some medical and/or athletic training services from the University, they did not know the Non-Individual Defendants failed to adequately consider their safety including in their engagement, hire, training, and supervision of Weiss.

196.   As a result of the University's and the Regents' deliberate indifference, Plaintiffs have suffered loss of educational opportunities and/or benefits.

197.   Plaintiffs have and incurred, and will continue to incur, attorney's fees and costs of litigation.

198.   At the time of Defendants' misconduct and wrongful actions and inactions, Plaintiffs were unaware, and or with reasonable diligence could not have been aware, of Defendants' institutional failings with respect to their responsibilities under Title IX.

199.   The Regents and the University maintained a policy and/or practice of deliberate indifference to protection of female student athletes.

200.    Defendants' policy and/or practice of deliberate indifference to protection against the invasion of privacy for female athletes created a increased risk of sexual harassment.

201.   Despite being able to prevent these privacy violations and acts of harassment, Defendants failed to do so.

202.   Because of the Regents' and the University's policy and/or practice of deliberate indifference, Plaintiffs had their privacy invaded and were sexually harassed by Weiss.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

203.    Plaintiffs should be awarded all such forms of damages in this case for Regents' and the University's conduct that caused great damage, humiliation, and embarrassment to Plaintiffs and the Class.

### COUNT IV – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE

#### *(Defendant Weiss)*

204.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

205.    Plaintiffs allege Defendant Weiss violated their civil rights under 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.

206.    Defendant Weiss, sued in his individual capacity, was a state employee at all times relevant to this action, and acted under color of state law to deprive Plaintiffs of their "rights, privileges or immunities secured by the Constitution and laws" of the United States, 42 U.S.C. § 1983, specifically their Fourth Amendment right to be free warrantless and unreasonable searches and seizures.

207.    At the time of his actions giving rise to this case, Weiss was a state actor, functioning in his capacity as a coach and employee of the University of Michigan, when he intentionally searched and seized Plaintiffs' private information without their consent, without a warrant, without probable cause or reasonable suspicion, and without any lawful basis or justification, in violation of Plaintiffs' clearly established rights under the Fourth Amendment.

208.    The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...."

209.    It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755 (2010) (citing *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 530 (1967)).

210.    "The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function." *Id.* (quoting *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614 (1989)).

211.    Plaintiffs had a reasonable and legitimate expectation of privacy in their private, personal, and intimate information and images.

212.    Acting under color of law, Defendant Weiss violated Plaintiffs' clearly established right not to have their private, personal, and intimate information and images. accessed, searched, viewed, and seized when he searched and seized Plaintiffs' private, personal, and intimate information and images without a warrant, without reasonable suspicion, without probable cause, and without any lawful basis, justification or need to support such an intrusion on Plaintiffs' reasonable and legitimate expectation of privacy in that information.

213.    Defendant Weiss's search and seizure of Plaintiffs' personal information was per se unreasonable under the Fourth Amendment.

214.    Defendant Weiss' search and seizure of Plaintiffs' private, personal, and intimate information and images was unjustified at its inception and was not related in scope to any circumstances that would justify the search and seizure in the first place.

215.    Defendant Weiss is not entitled to qualified immunity because Plaintiffs' rights under the Fourth Amendment not to have their personal information searched and seized by him without a warrant, without permission, and without any lawful basis or justification, was obvious

and clearly established when Weiss accessed Plaintiffs' private information, such that no reasonable person in Weiss's position would believe that the act of searching and seizing Plaintiffs' private information was lawful under the specific circumstances presented, and Weiss had fair warning under the law as it existed at the time of his actions that those actions obviously violated Plaintiffs' rights under the Fourth Amendment. See, e.g., G.*C. v. Owensboro Public Schools*, 711 F.3d 623 (6th Cir. 2013) (Holding that high school officials violated the Fourth Amendment by searching a student's cell phone and reading his text messages); see also *Brannum v. Overton County School Bd.*, 516 F.3d 489, 499 (Stating that "Some personal liberties are so fundamental to human dignity as to need no specific explication in our Constitution in order to ensure their protection against government invasion[,]" and holding that school officials violated Fourth Amendment by installing cameras to surreptitiously record students in locker rooms.)

216.    As a direct and proximate result of Weiss's violation of Plaintiffs' Fourth Amendment rights, Plaintiffs have suffered, and will continue to suffer into the future, damage, humiliation, and embarrassment.

217.    Plaintiffs should be awarded all such forms of damages in this case for Weiss's conduct that caused great damage, humiliation, and embarrassment to Plaintiffs and the Class.

### COUNT V — VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 – DUE PROCESS/BODILY INTEGRITY

#### *(Defendant Weiss)*

218.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

219.    Plaintiffs are alleging Defendant Weiss violated their civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

220.    Defendant Weiss, sued in his individual capacity, was a state employee at all times relevant to this action, and acted under color of state law to deprive Plaintiffs of their "rights, privileges or immunities secured by the Constitution and laws" of the United States, 42 U.S.C. § 1983, specifically their Fourteenth Amendment equal protection right to be free from sexual harassment in an educational setting, and their Fourteenth Amendment due process right to be free from violation of bodily integrity. *West v. Atkins*, 487 U.S. 42, 49-50 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n. 18 (1982)).

221.    At the time of the actions giving rise to this case, it was obvious, clearly established, and known to Weiss that the right to be free from sexual abuse at the hands of a state employee was protected by the Due Process Clause of the Fourteenth Amendment, such that he knew his actions in accessing Plaintiffs' Plaintiffs' private, personal, and intimate information and images violated Plaintiffs' fundamental right of due process. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 506-07 (6th Cir. 1996) (Stating that "the Due Process Clause protects students against abusive governmental power as exercised by a school. To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood. If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.").

222.    At the time of his actions giving rise to this case, Weiss was a state actor, functioning in his capacity as a coach and employee of the University of Michigan, when he

34

intentionally engaged in actions which violated Plaintiffs' right of bodily integrity, in violation of the Due Process Clause.

223.    Weiss's actions were malicious, intentionally harmful, and were taken with deliberate indifference, and were so outrageous as to shock the contemporary conscience.

224.    As a direct and proximate result of Weiss's violation of Plaintiffs' Fourteenth Amendment rights, Plaintiffs have suffered, and will continue to suffer into the future, damage, humiliation, and embarrassment.

225.    Plaintiffs should be awarded all such forms of damages in this case for Weiss's conduct that caused great damage, humiliation, and embarrassment to Plaintiffs and the Class.

### COUNT VI — VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 – EQUAL PROTECTION

### *(Defendant Weiss)*

226.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

227.    Plaintiffs are alleging Defendant Weiss violated their civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution.

228.    Weiss's deliberate and intentional actions in accessing Plaintiffs' personal, private, and intimate images and information constituted sexual harassment and abuse because Weiss accessed Plaintiffs' highly sensitive, private, and personal information, data, and media for his own personal and sexual purposes.

229.    At the time of the actions giving rise to this case, it was obvious, clearly established, and known to Weiss that the right to be free from gender discrimination, including sexual harassment and abuse at the hands of a state employee, was protected by the Equal Protection Clause of the Fourteenth Amendment, such that Weiss knew his actions in accessing Plaintiffs'

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

personal, private, and intimate images and information violated Plaintiffs' rights under the Fourteenth Amendment. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-258 (2009); see also *Daniels v. Board of Education*, 805 F.2d 203, 206-07 (6th Cir.1986); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988); *Kitchen v. Chippewa Valley Sch.*, 825 F.2d 1004, 1012 (6th Cir. 1987).

230.     At the time of his actions giving rise to this case, Weiss was a state actor, functioning in his capacity as a coach and employee of the University of Michigan, when he intentionally engaged in sexual harassment and sexual abuse, in violation of the Equal Protection Clause.

231.     As a direct and proximate result of Weiss's violation of Plaintiffs' Fourteenth Amendment rights, Plaintiffs have suffered, and will continue to suffer into the future, damage, humiliation, and embarrassment.

232.     Plaintiffs should be awarded all such forms of damages in this case for Weiss's conduct that caused great damage, humiliation, and embarrassment to Plaintiffs and the Class.

### COUNT VII -– VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 – DUE PROCESS/DEPRIVATION OF PROPERTY

#### *(Defendant Weiss)*

233.     Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

234.     Plaintiffs are alleging Defendant Weiss violated their civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution.

235.     Defendant Weiss, sued in his individual capacity, was a state employee at all times relevant to this action, and acted under color of state law to deprive Plaintiffs of their "rights, privileges or immunities secured by the Constitution and laws" of the United States, 42 U.S.C. §

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

1983, specifically their Fourteenth Amendment due process right to be free of deprivations of property without due process

236.    At the time of the actions giving rise to this case, it was obvious, clearly established, and known to Weiss that the right not to be deprived of one's property without due process was protected by the Due Process Clause of the Fourteenth Amendment, such that he knew his actions in accessing and misappropriating Plaintiffs' private, personal, and intimate information and images violated Plaintiffs' fundamental right of due process.

237.    Plaintiffs and others similarly situated had a protected property interest in their personal, private, intimate, and confidential information.

238.    At the time of his actions giving rise to this case, Weiss was a state actor, functioning in his capacity as a coach and employee of the University of Michigan, when he intentionally engaged in actions which violated Plaintiffs' right not to be deprived of their personal property, in violation of the Due Process Clause.

239.    Weiss' actions were malicious, intentionally harmful, and were taken with deliberate indifference, and were so outrageous as to shock the contemporary conscience.

240.    As a direct and proximate result of Weiss' violation of Plaintiffs' Fourteenth Amendment rights, Plaintiffs have suffered, and will continue to suffer into the future, damage, humiliation, and embarrassment.

241.    Plaintiffs should be awarded all such forms of damages in this case for Weiss' conduct that caused great damage, humiliation, and embarrassment to Plaintiffs and the Class.

## COUNT VIII – FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. § 1983

### *(Defendants University and Regents)*

242.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

243.   Plaintiffs allege the University and the Regents failed to train and supervise Weiss properly under 42 U.S.C. § 1983.

244.   The University and the Regents had the ultimate responsibility and authority to train and oversee their employees, agents, and/or representatives including Weiss and all faculty and staff regarding their duties toward students, faculty, staff and visitors.

245.   The University and the Regents neglected to train and supervise their employees, agents, and/or representatives including Weiss and all faculty and staff, regarding the following duties:

    a.   Recognizing, reporting, and preventing unauthorized invasions of privacy on campus;

    b.   Providing diligent supervision of student athletes and other individuals, including Weiss;

    c.   Investigating any and all privacy invasions committed by Weiss;

    d.   Safeguarding all students, faculty, staff, alumni, and visitors on the University's campus premises;

    e.   Maintaining a campus environment free from sexual harassment and invasions of privacy; and

    f.   Properly training faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

246.   The University and the Regents failed to adequately train coaches, trainers, medical staff, Weiss, and others regarding the aforementioned duties which led to violations of Plaintiffs' rights.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

247. The lack of training was the result of Defendants' deliberate indifference toward the well-being of student athletes.

248. The University and the Regents failure to adequately train is the direct cause of Plaintiffs' injuries and those similarly situated.

249. As a result, the University and the Regents deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

250. Plaintiffs should be awarded all such forms of damages in this case for the Regents' and the University's conduct that caused harm, humiliation, distress, and embarrassment to Plaintiffs and the Class.

## COUNT IX – INVASION OF PRIVACY INTRUSION UPON SECLUSION

### (Defendant Weiss)

251. Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

252. Plaintiffs allege Defendant Weiss intentionally invaded Plaintiffs' privacy by intruding upon their seclusion.

253. Plaintiffs allege the University and the Regents are vicariously liable for Weiss invading Plaintiffs' privacy by intruding upon their seclusion.

254. Plaintiffs' personal social media files, videos, and other images were each in electronic storage and were intended to be kept private.

255. Weiss unlawfully accessed this information.

256. His actions were not authorized.

257. This information would not have been obtained absent the negligence and misconduct of the Defendants.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

258.    Plaintiffs never granted permission to such access.

259.    Plaintiffs feel embarrassed, ashamed, humiliated, and distressed that their private information has been accessed by strangers and third parties.

260.    Plaintiffs' social media data, images, and other media are private information.

261.    Plaintiffs had the right to expect all this information would remain private.

262.    The methods Weiss used to access such information was objectively unreasonable.

263.    As a result of Weiss' actions, Plaintiffs have incurred significant monetary and nonmonetary damages as a result of Defendants' actions and request the appropriate damages.

## COUNT X – GROSS NEGLIGENCE

### (Defendants Weiss and Keffer)

264.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

265.    Plaintiffs allege Defendants Weiss and Keffer were grossly negligent.

266.    Plaintiffs entrusted the Regents and the University to ensure methods were undertaken to secure, safeguard, and protect against authorized access to their private information.

267.    Keffer was entrusted to keep Plaintiffs' private information private.

268.    Plaintiffs relied on Defendant Keffer to securely maintain their personal, private information and data.

269.    Plaintiffs did not authorize access to such information, data, and media by Weiss.

270.    Plaintiffs had a right to keep such information, data, and media private, and had a reasonable expectation that Defendant Keffer would do so.

40

271.   Defendant Keffer had a duty to securely maintain the Plaintiffs and others similarly situated personal photographs, videos and digital data.

272.   Defendant Keffer was grossly negligent and breached their duties owed to the Plaintiffs and those similarly situated by:

      a.    Failing to securely maintain their database to prevent unauthorized access of personal and private information;

      b.    Failing to implement reasonable protective measures to detect Weiss's unauthorized access and irregular activity, including, but not limited to appropriate authentication tools, behavioral analytics, anomaly detection, machine learning, and real-time monitoring of user activity;

      c.    Failing to appropriately monitor for deviations from expected patterns and suspicious logins, including multiple failed attempts to access accounts, unusual log-in attempts, or repeated access to sensitive data;

      d.    Failing to notify the Plaintiffs and other student-athletes that there personal, private data had been improperly accessed; and

      e.    Other negligence to be discovered.

273.   The information, data, and media could not have been accessed but for Keffer's negligence.

274.   Had Defendant Keffer securely maintained Plaintiffs data, this would have prevented Weiss from improperly and unlawfully accessing the private information of Plaintiffs and those similarly situated.

275.   It was foreseeable that the personal, sensitive information of young female athletes may be a target of hacking, as such, reasonable care required Keffer to have appropriate systems in place to prevent such hacking and alerting them to such activity so it could be immediately terminated and allowed to persist for years.

276.   Plaintiffs are embarrassed, ashamed, humiliated, and mortified that their private information has been accessed by total strangers and third parties.

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

277.    Keffer's failures and omissions to secure this private data was so reckless that it shows a substantial lack of concern for injuries to Plaintiffs and the Class.

278.    The Plaintiffs' private and personal information, data, and media was accessed by Weiss unlawfully.

279.    Weiss' actions were unlawful and grossly negligent.

280.    Plaintiffs did not authorize access to such information, data, and media by Weiss.

281.    Plaintiffs and those similarly situated have incurred significant monetary and nonmonetary damages as a result of Defendants' actions, and should be awarded damages accordingly.

<u>**COUNT XI – NEGLIGENCE**</u>

<u>***(Defendant Keffer)***</u>

282.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

283.    Plaintiffs entrusted the Regents and the University to ensure methods were undertaken to secure, safeguard, and protect against authorized access to their private information.

284.    Keffer was entrusted to keep Plaintiffs' private information private.

285.    Plaintiffs relied on Defendant Keffer to securely maintain their personal, private information and data.

286.    Plaintiffs did not authorize access to such information, data, and media by Weiss.

287.    Plaintiffs had a right to keep such information, data, and media private, and had a reasonable expectation that Defendant Keffer would do so.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

288. Defendant Keffer had a duty to securely maintain the Plaintiffs and others similarly situated personal photographs, videos and digital data.

289. Defendant Keffer breached their duties owed to the Plaintiffs and those similarly situated by:

      a.    Failing to securely maintain their database to prevent unauthorized access of personal and private information;

      b.    Failing to implement reasonable protective measures to detect Weiss's unauthorized access and irregular activity, including, but not limited to appropriate authentication tools, behavioral analytics, anomaly detection, machine learning, and real-time monitoring of user activity;

      c.    Failing to appropriately monitor for deviations from expected patterns and suspicious logins, including multiple failed attempts to access accounts, unusual log-in attempts, or repeated access to sensitive data;

      d.    Failing to notify the Plaintiffs and other student-athletes that there personal, private data had been improperly accessed; and

      e.    Other negligence to be discovered.

290. The information, data, and media could not have been accessed but for Keffer's negligence.

291. Had Defendant Keffer securely maintained Plaintiffs data, this would have prevented Weiss from improperly and unlawfully accessing the private information of Plaintiffs and those similarly situated.

292. It was foreseeable that the personal, sensitive information of young female athletes may be a target of hacking, as such, reasonable care required Keffer to have appropriate systems in place to prevent such hacking and alerting them to such activity so it could be immediately terminated and allowed to persist for years.

293. Plaintiffs are embarrassed, ashamed, humiliated, and mortified that their private information has been accessed by total strangers and third parties.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.

294.    Keffer's failures and omissions to secure this private data was so negligent that it shows a substantial lack of concern for injuries to Plaintiffs and the Class.

295.    Plaintiffs and those similarly situated have incurred significant monetary and nonmonetary damages as a result of Defendants' actions, and should be awarded damages accordingly.

## COUNT XII - TRESPASS TO CHATTELS

### *(Defendant Weiss)*

296.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

297.    Plaintiffs allege Defendant Weiss is guilty of trespass to chattels.

298.    Plaintiffs allege the University and the Regents are vicariously liable for Weiss' trespass to chattels.

299.    Weiss intentionally and unlawfully access Plaintiffs' private and personal data, information, and media, thereby wrongfully asserting control over and interfering with their sensitive data without authorization.

300.    This unauthorized access and control was deliberate and carried out with malicious intent.

301.    Plaintiffs and the Class have incurred significant monetary and nonmonetary damages as a result of Weiss's intentional misconduct.

302.    Plaintiffs are entitled to exemplary damages as a result of these intentional and harmful act and interference with, and wrongful exercise of control over, their property.

44

## COUNT XIII – VIOLATIONS OF MCL § 600.2919a

### *(Defendant Weiss)*

303.    Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

304.    Plaintiffs allege Defendant Weiss violated MCL § 600.2919a.

305.    Plaintiffs allege the University and the Regents are vicariously liable for Weiss' violation of MCL § 600.2919a.

306.    MCL § 600.2919a provides:

    a.    (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

        i)    (a) Another person's stealing or embezzling property or converting property to the other person's own use.

        ii)    (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

    b.    (2) The remedy provided by this section is supplemental to any other legal or equitable right or remedy available.

307.    Plaintiffs were damaged as a result of Weiss possessing, concealing, aiding the concealment of, stealing, and/or embezzling Plaintiffs' private and personal information and converting that information, those videos, and those images to Weiss' own use by using that information for his own purposes and benefit.

308.    Under MCL § 600.2919a, Plaintiffs are entitled to recover three times actual damages, plus costs and reasonable attorney fees.

LAW OFFICES

SOMMERS SCHWARTZ, P.C.

## COUNT XIV – ASSAULT

### *(Defendant Weiss)*

309.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

310.   Plaintiffs allege Defendant Weiss assaulted Plaintiffs and those similarly situated.

311.   Plaintiffs allege the University and the Regents are vicariously liable for Defendant Weiss' assault on Plaintiffs.

312.   Weiss' conduct, in accessing Plaintiffs' and other Class Members' personal and private information as outlined above was intentional without consent, authorization, or any legal justification.

313.   His conduct caused a reasonable apprehension of imminent harm onto Plaintiffs and others similarly situated.

314.   As a result, Plaintiffs suffered severe damages and seek compensation as appropriate for these damages.

## COUNT XV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(Defendant Weiss)*

315.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

316.   Plaintiffs allege Defendant Weiss is guilty of intentional infliction of emotional distress on Plaintiffs.

317.   Plaintiffs allege the University and the Regents are vicariously liable for Defendant Weiss' intentional infliction of emotional distress on Plaintiffs.

46

318.   Weiss' conduct in accessing Plaintiffs' private and personal data, media, and information, as outlined above, was intentional.

319.   Weiss' conduct was both extreme and outrageous.

320.   Weiss' access of Plaintiffs' private and personal data, information, and media was not for any proper or authorized use.

321.   Weiss' conduct caused severe emotional distress to Plaintiffs.

322.   Plaintiffs suffered severe emotional distress and economic damage as a result of Weiss' intentional actions and as such Plaintiffs seek compensation as appropriate for these damages.

### COUNT XV – VIOLATION OF MICHIGAN IDENTITY THEFT PROTECTION ACT – MCL 445.61 *et. seq.*

### *(Defendants Weiss and Keffer)*

323.   Plaintiffs restate and incorporate the allegations set forth above as if fully set forth herein.

324.   Plaintiffs allege Defendants Weiss and Keffer violated the Michigan Identity Theft Protection Act.

325.   Plaintiffs' personal and private media, content, data, and information were stored electronically and intended to be kept private.

326.   Weiss unlawfully accessed this private and personal information, data, and media.

327.   His actions were not authorized.

328.   Keffer maintained a database of Plaintiffs' sensitive information.

329.   Keffer had a duty to notify Plaintiffs of the unauthorized breach of their very private data.

330.   Defendants failed to notify Plaintiffs of such.

47

331.   As a result, Plaintiffs and others similarly situated were unaware for years that their very sensitive data was being accessed without their permission or authorization in violation of Michigan's Identity Theft Protection Act.

332.   As a result of Defendants' conduct, Plaintiffs suffered significant and severe damages and as such Plaintiffs seek compensation as appropriate for these damages.

## RELIEF

**WHEREFORE**, Plaintiffs pray this Court grant the following relief:

a.   Enter a judgment encompassing the relief requested above, plus significant compensatory damages exceeding $50,000,000.00 together with costs, interest and attorney fees, against Defendants, and such other relief to which they are entitled;

b.   An order certifying the proposed Class and Subclasses; designating Plaintiffs as the named representatives of the respective Class Members; and appointing their counsel as Class Counsel;

c.   All such equitable relief as the Court deems proper and just, including but not limited to, declaratory relief;

d.   Enter judgment in favor of Plaintiffs and against Defendants for treble the amount of the Surplus Proceeds plus actual attorney fees for violation of MCL 600.2919a;

e.   Award Plaintiffs costs, attorney fees as well as interest from the date of Judgment until paid; and

f.   Grant such further relief as is agreeable to equity and good conscience.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Respectfully Submitted,

SOMMERS SCHWARTZ, P.C.


By: _/s/ Lisa M. Esser_
Lisa M. Esser (P70628)
Richard L. Groffsky (P32992)
Jason J. Thompson (P47184)
Matthew G. Curtis (P37999)
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI  48076
(248) 355-0300
LEsser@sommerspc.com
rgroffsky@sommerspc.com
JThompson@sommerspc.com
MCurtis@sommerspc.com


Megan Bonanni (P52079)
Kevin M. Carlson (P67704)
Beth M. Rivers (P33614)
Danielle Y. Canepa (P82237)
Attorneys for Plaintiffs
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonnani@pittlawpc.com
kcarlson@pittlawpc.com
brivers@pittlawpc.com
dcanepa@pittlawpc.com

Dated: April 2, 2025

LAW OFFICES
SOMMERS SCHWARTZ, P.C.